## THE STATE OF KANSAS v. A. HORN.

1. PUBLIC ROAD; *Jurisdiction of County Commissioners.* When a board of county commissioners appoints viewers to view and lay out a public road, the board exhausts its jurisdiction for the time being, and has no jurisdiction to proceed further in the establishment of the road until other jurisdictional facts are brought into existence.

2. —————— *No Jurisdiction, When.* Where such viewers have been appointed, but do not act or make any report to the county board, but one of the viewers in conjunction with a stranger acts and makes a report, *held*, that the county board has no jurisdiction to establish the road.

3. —————— *Report and Record as Evidence.* Where the record of the county board recites that two of the viewers acted and made a report, but the report itself shows otherwise, *held*, that the report is the better evidence, and must prevail.

4. —————— *Irregularities; Jurisdiction; Review.* While superior courts will construe the proceedings of inferior tribunals with regard to mere irregularities with great liberality, so as to uphold such proceedings, yet they will also rule strictly with regard to matters of jurisdiction, for the purpose of keeping such inferior tribunals strictly within the limits of their jurisdiction.

*Appeal from Leavenworth District Court.*

PROSECUTION for obstructing a public road. At the September Term, 1884, the defendant *Horn* was found guilty, and sentenced to pay a fine of $75 and costs. He appeals. The opinion states the case.

*J. P. Usher*, for appellant.

*S. E. Wheat*, county attorney, for The State.

The opinion of the court was delivered by

VALENTINE, J.: This was a criminal prosecution under
§ 17 of the act relating to roads and highways. (Comp. Laws
of 1879, ch. 89, § 17.)　The charge was that the defendant,
A. Horn, willfully obstructed a public highway in Leaven-
worth county.　The defendant pleaded not guilty, and also
filed a special plea.　The case was tried in the district court
of Leavenworth county, before the court and a jury, which
trial resulted in a verdict and judgment against the defendant.
The judgment was, that the defendant should pay a fine of $75
and the costs of suit; and to reverse this judgment the de-
fendant now appeals to this court.

The main or principal question involved in this case is,
whether the road or highway which the defendant is charged
with having obstructed was in fact and in law a public road
or highway, or not.　Several other questions, however, are
involved in this main or principal question: *First.* Has the
state the power or authority to establish a public road or
highway at the place where it is claimed that this road or
highway was established and obstructed?　*Second.* If the
state has any such power or authority, then has the same been
exercised in such a manner as to create any such public road
or highway?　For the purposes of this case, we shall assume
that the state has the power and authority to establish a public
road or highway at the place where it is claimed that this
road or highway was established and obstructed, and shall
pass at once to the other question, whether this road or high-
way was in fact established in such a manner as to make it a
legal road or highway.　If this road was in fact and in law
a public road or highway, it was such only by virtue of its
having been established by the board of county commissioners
of Leavenworth county in the year 1869, under the act of the
legislature of March 2, 1866, relating to roads and highways.
(Gen. Stat. of 1868, ch. 89.)　The road record of such board
of county commissioners was introduced in evidence by the
state, over the objections of the defendant, to prove that such

road was legally and in fact established. This record shows in substance as follows: On September 20, 1869, a petition for such road was filed in the office of the county clerk of said county. On October 4, 1869, a bond for costs and expenses and a notice that the petition would be presented to the county board on September 20, 1869, were filed in the office of said county clerk. To this notice was attached an affidavit, stating that the notice was published in a newspaper of general circulation in the county for three consecutive weeks, beginning on August 13, 1869. On Monday, October 18, 1869, the foregoing petition was considered by the board, and the board granted the prayer of the petition and appointed J. D. Reynerson, W. Stephens and B. F. Kelley to view and lay out the road in conjunction with the county surveyor, and ordered that they meet at the house of J. S. Duncan, at Stranger, in said township, on October 30, 1869, at 10 o'clock in the forenoon, and proceed to view and lay out the proposed road, in accordance with the prayer of the petitioners; and it was further ordered that in the event of their failure to meet at the time and place appointed, the viewers should meet within five days thereafter. The road record of the county board then states that on November 10, 1869, two of the viewers filed their report and the surveyor's plat. This report is dated November 4, 1869, and it states that B. F. Kelley and J. H. Freeman met in front of J. H. Duncan's house on October 28, 1869, at 7 o'clock in the forenoon, and proceeded to the house of A. Stephens, and there subscribed an oath and proceeded to view and locate the road. The report is signed by B. F. Kelley and A. Stephens. The map and field-notes are signed by E. I. Farnsworth, county surveyor, by J. H. Freeman, deputy. The road record of the county board then states that on December 6, 1869, at a regular session of the board, William Stephens and B. F. Kelley, two of the viewers, presented their report, which was considered by the board; and the report, plat and survey were adopted, and the road declared a public highway and ordered to be opened for public travel.

It will be seen from this report that great irregularities occurred in the attempt to establish this road. The county board appointed J. D. Reynerson, W. Stephens and B. F. Kelley to view and lay out the road, in conjunction with the county surveyor, but neither Reynerson nor W. Stephens seems to have taken any part therein. Reynerson's name is not even mentioned afterward. The board ordered that the viewers should meet at the house of J. S. Duncan, on October 30, 1869, at ten o'clock in the forenoon, but the viewers never met at that place or at any other place, and no persons met at the time appointed by the board. Kelley and J. H. Freeman met at the place appointed by the board on October 28, 1869, at 7 o'clock in the forenoon, but even they did not meet at the time fixed by the county board. Kelley and Freeman then proceeded to the house of A. Stephens, where they subscribed an oath, but what the oath was which they subscribed, or whether they were sworn to it or not, is not shown. The report is also ambiguous as to whether A. Stephens even subscribed the oath or not. Indeed, it does not appear that he was even present at the time. It appears, however, from recitals in the record of the board of county commissioners, that although W. Stephens took no part in the viewing or laying out of the road, still that afterward he and Kelley appeared before the board of county commissioners and presented to the board the report made and signed by Kelley and A. Stephens. There is no pretense, however, further than as above shown, that W. Stephens or William Stephens is the same person as A. Stephens; and we cannot assume that such is the case without evidence. The report itself, in the absence of clear proof of fraud or mistake, is the best evidence as to who viewed and laid out the road, and as to who made and signed the report.

It further appears from the agreement of the parties, that the defendant in this case was in the employment of the owner of the land over which the supposed public road is alleged to have been established; and that he did not obstruct such road any further than was necessary in the quarrying of stone under the authority, and for the use and benefit of his em-

ployer; and although this was the only obstruction of which the defendant was guilty, yet it seems to be admitted that it was a "*willful*" obstruction within the statute, provided the road had been properly established and had become a public road or highway, as against the defendant's employer. We might further say in this connection, that the defendant's employer was a railroad company, chartered and organized under the laws of Kansas, and doing business and operating its railroad within the county in which this action was commenced, and was therefore a resident of such county, if a railroad company can ever be a resident of any place. And we might further say, that there is no evidence that any notice was ever given to or received by the railroad company of the intended establishment of this road, prior to its supposed establishment; and no evidence that the railroad company ever received any compensation for the use of its land as a public road or highway.

We now come to the question whether the foregoing road was ever legally established as against the defendant, or as against the owner of the land over which it is supposed the road was established; for the defendant, being an employé of such owner, and acting under its express authority, had the right to do whatever the owner had the right to do, and now has the right to interpose any defense which the owner might interpose if it itself were charged with causing the obstruction complained of. We think we must answer this question in the negative. We shall assume, however, that the county board had jurisdiction to appoint the viewers to view and lay out the road; but the question then arises, did such board have jurisdiction to proceed any further? We think it had a conditional jurisdiction to proceed further, depending upon the contingency that other jurisdictional facts should afterward be brought into existence; but without these subsequent and additional jurisdictional facts it had no further power or jurisdiction to act in the premises. When it appointed the viewers, it in effect created another tribunal to view and lay out the road; and its

1. Public road; jurisdiction of county board.

jurisdiction for the time being was exhausted, and its powers and duties then ceased until this other tribunal had exercised its functions and made a report to the board, or until it should be determined that this other tribunal had refused to act, when the county board would again have jurisdiction to act, and a jurisdiction to act either with reference to this other tribunal's report, or with reference to its refusal to act. The county board could not under any circumstances view and lay out the road itself; nor could it establish the road without appointing viewers; nor could it establish the road except upon the report of the viewers. Any other course would be beyond its jurisdiction. In the present case, all the jurisdiction of the county board with regard to the road ceased when it appointed the viewers, until the viewers had time to act and make their report; and if the viewers had acted and made their report, then the jurisdiction of the board to take further action would have been simply to act upon the report of the viewers. Now the viewers never in fact acted, and never in fact made any report. This is shown by the report itself—the report that was actually filed as a report of the viewers. It is true the commissioners in their record recite that the viewers, or rather a majority of them, made a report; but as the report itself was introduced in evidence, it must speak for itself; and it is stronger and better evidence of the facts which it recites than any mere recitals of the commissioners in their record. (*Mickel v. Hicks*, 19 Kas. 578.) While such recitals of the county board would, in the absence of other evidence, be sufficient, yet the value of such recitals as evidence is wholly overturned and destroyed by the report itself, which shows a different state of facts. Now as the viewers never acted or made any report, it was the duty of the county board to ascertain why, and fix another time for the meeting of the viewers, or to appoint new viewers, as the facts might justify; but under no circumstances could the county board at that time establish the road. We think the county board acted

3. Report of road viewers better evidence than record of county board.

2. Action without jurisdiction. beyond its jurisdiction when it attempted to establish the road upon the report of only one of the viewers in conjunction with a stranger; and as the board so acted beyond its jurisdiction, its proceedings are void. Such is the rule with respect to all tribunals acting beyond their jurisdiction, or in excess of jurisdiction. While they act within the limits of their jurisdiction their proceedings are valid, whatever informalities or irregularities may intervene; but whenever they transcend their jurisdiction, their proceedings to that extent are absolutely void. Also, while superior courts will construe the proceedings of inferior tribunals with regard to mere irregularities with great liberality, so as to uphold such proceedings, yet they will also rule strictly with regard to matters of jurisdiction for the purpose of keeping such inferior tribunals strictly within the limits of their jurisdiction. (*Willis v. Sproule*, 13 Kas. 258, 268, 269.)

4. Irregularities; jurisdiction; review.

We have examined all the authorities cited by counsel for the state, and do not think that any one of them is applicable to the facts of this case. Some of the language used in the opinion in the case of *Comm'rs of Leavenworth County v. Espen*, 12 Kas. 531, may seem to have some application, but still that case was very different from this. That was an action for a perpetual injunction to restrain the county commissioners of Leavenworth county from opening a road, for the reason that the plaintiff, who was the owner of the land through which the road was established, had no notice of the contemplated establishment of the road prior to its establishment, and consequently obtained no damages or compensation; and this want of notice was the only irregularity disclosed or urged in that case. There was no claim in that case, as in this, that the viewers appointed by the county board did not act at all. It must also be remembered that this is a *criminal action*, in which the defendant, who was acting for and under the express authority of the land-owner, is charged with willfully obstructing a highway. Such was not that case.

C. B. U. P. Rld. Co. v. Andrews, *Adm'r.*

With regard to the other questions involved in this case, we shall assume that the court below decided correctly.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.